588 F.2d 371
 18 Fair Empl.Prac.Cas. 1540, 18 Empl. Prac.
Dec. P 8730
Walter MARTIN, Plaintiff-Appellant,
v.
NEW YORK STATE DEPARTMENT OF MENTAL HYGIENE, Dr. Stuart
Keill, Regional Director, Defendants-Appellees.
 No. 346, Docket 78-7363.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 8, 1978.
Decided Dec. 11, 1978.
 
 Frederick C. Hayes, New York City, for plaintiff-appellant.
 Judith T. Kramer, Asst. Atty. Gen. of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, SMITH and VAN GRAAFEILAND, Circuit Judges.
 PER CURIAM:
 
 
 1
 Walter Martin was appointed Acting Director of the Manhattan Development Center (MDC) in 1974 by Dr. Stuart Keill, Regional Director of the New York State Department of Mental Hygiene. Martin, who is black, took disability leave from June 1975 to May 1976, and upon his return to work was appointed Chief of Treatment Services at Willowbrook, a position he still holds.
 
 
 2
 In the fall of 1975, while on leave from his position at the MDC, Martin filed an employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e Et seq., against Keill and the Department of Mental Hygiene. Martin's complaint stated only that the defendants had discriminated against him on the basis of race between August 1974 and June 1975 by denying him the authority, salary, and privileges commensurate with his position.[1] He also alleged that the discrimination was continuing, and accordingly sought injunctive relief as well as money damages.
 
 
 3
 The defendants moved to dismiss the complaint against the Department of Mental Hygiene for failure to state a claim under Fed.R.Civ.P. 12(b)(6). They also moved pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(5) to dismiss the complaint against Keill on the grounds that the district court lacked personal jurisdiction, and that Keill had never been served with the summons and complaint. Judge Pierce granted these motions, and this appeal followed.
 
 
 4
 It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6). Serzysko v. Chase Manhattan Bank, 461 F.2d 699, 703 (2d Cir.) (Per curiam ), Cert. denied, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972). In Avins v. Magnum, 450 F.2d 932 (2d Cir. 1971), for example, we ruled that the plaintiff's allegation that a law school had failed to hire him because of his political beliefs was wholly conclusory. Similarly, we have held that a mere statement that plaintiff was dismissed from his job because of his race failed to state a claim. Birnbaum v. Trussel, 347 F.2d 86 (2d Cir. 1966). Since Martin has alleged only that he was denied the perquisites of his position because of his race, his suit falls squarely within the rule established in this line of cases. We affirm Judge Pierce's order dismissing the complaint against the Department for failure to state a claim, without prejudice to Martin's right to file an amended complaint.[2]
 
 
 5
 The parties agree that Dr. Keill, who is no longer an employee of the Department, has never been served with the summons and complaint as Fed.R.Civ.P. 4 requires. Martin contends, however, that Dr. Keill had actual notice of the suit, and that counsel for the defendants refused to provide him with Dr. Keill's address. He also maintains that because Keill agreed to be represented by the State Attorney General, he has waived the right to demand compliance with Rule 4. We find this argument to be meritless.
 
 
 6
 Absent a waiver, Rule 4 mandates that the defendant be served with the summons and complaint personally, or in accordance with one of several prescribed alternatives. A showing that the defendant has had actual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2). See Di Leo v. Shin Shu, 30 F.R.D. 56 (S.D.N.Y.1961); 2 Moore's Federal Practice P 4.11(1), at 4-115 to 4-116 (2d ed. 1978).
 
 
 7
 Nor can Martin plausibly contend that Dr. Keill waived this requirement and submitted to the jurisdiction of the district court, merely because Keill allowed the Attorney General to raise in that forum the defenses of lack of personal jurisdiction and insufficiency of service of process. Rule 12(b) was designed to allow a moving party to challenge the court's jurisdiction over his person or the insufficiency of service of process without incurring the very consequence Martin seeks to impose on Keill here. See Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 490 (5th Cir. 1974); Lynn v. Cohen, 359 F.Supp. 565, 566-67 (S.D.N.Y.1973); 5 Wright & Miller, Federal Practice & Procedure § 1344 (1969). Since Keill invoked these defenses in timely fashion, and the parties agree that he was never served, Judge Pierce correctly dismissed the complaint against him.[3]
 
 
 8
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 Martin had previously filed unsuccessful complaints with the State Division of Human Rights and with the Federal Equal Employment Opportunity Commission. He appended to his complaint his EEOC affidavit, which seems to allege that Keill vengefully nullified a permanent civil service grade increase to which he was entitled
 
 
 [2]
 We note in passing that the trial judge overlooked some recent law in ruling that the Eleventh Amendment bars Martin from suing the State and Dr. Keill (in his official capacity) for damages. In Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), did not prohibit damage suits against the states for violations of Title VII. The rationale for this conclusion was that since the 14th Amendment is itself a substantive limit on state authority, Congress may, under the enforcement power granted by Section 5, provide for suits against the states to vindicate interests protected by the Amendment even when damages will be paid directly from the state treasury
 For an enlightening theoretical explication of this concept, which antedates Bitzer, see Tribe, Intergovernmental Immunities in Litigation, Taxation and Regulation: Separation of Powers Issues in Controversies About Federalism, 89 Harv.L.Rev. 682, 683-99 (1976).
 
 
 [3]
 A dismissal for failure of service of process, of course, has no Res judicata effect. See Thomas v. Furness, Ltd., 171 F.2d 434 (9th Cir. 1948), Cert. denied, 337 U.S. 960, 69 S.Ct. 1522, 93 L.Ed. 1759 (1949)