Robert C. COURTEMANCHE, Plaintiff,

v.

The ENLARGED CITY SCHOOL DISTRICT OF the CITY OF MIDDLETOWN, NEW YORK; the Board of Education of the Enlarged City School District of the City of Middletown, New York; Carole Hankin, Martin A. Dlugatz, Oscar Sotsky, Paul Johnson, Edward B. Godwin, Edith Weiss, Thomas S. Grecco, Evelyn Isseks, John L. Masi, Joseph P. Moran and George Sands Individually and as Members or Former Members of the Board of Education of the Enlarged City School District of the City of Middletown, New York, Defendants.

No. 87 Civ. 8370 (GLG).

United States District Court,
S.D. New York.

May 5, 1988.

O'Hara & Crough, Syracuse, N.Y. by Craig P. Niederpruem, of counsel, Clark, Gagliardi & Miller, White Plains, N.Y. by Lawrence T. D'Aloise, of counsel, for plaintiff.

Plunkett & Jaffe, P.C., White Plains, N.Y. by John M. Donoghue, Lawrence Praga, of counsel, for defendants.

## OPINION

GOETTEL, District Judge:

This is another in a growing line of cases finding their way to this court based on substantially similar claims and facts—civil rights claims deriving from the firing of local school officials. In an effort to clear the air as to at least certain of the preliminary legal questions that seem consistently to recur in these cases, we address some of the questions raised by the pending motion in depth.

The plaintiff, Robert C. Courtemanche, is former superintendent of schools for the Enlarged City School District of the City of Middletown. He brings this action against the district, its board of education (the "Board"), and the Board's individual members concerning events surrounding his termination of employment. The complaint alleges a deprivation of constitutional rights under 42 U.S.C. § 1983 (1982), and pendent state claims for breach of contract and intentional infliction of emotional distress also are asserted.

The defendants move for dismissal of the action on a variety of grounds pursuant to Fed.R.Civ.P. 12(b). Plaintiff, in response, brings a motion for summary judgment pursuant to Fed.R.Civ.P. 56(a) and for attorney's fees pursuant to 42 U.S.C. § 1988 (1982). Plaintiff's motion is so obviously premature (an answer not having been served and discovery not having been con-

ducted) that we deny it outright without discussion. We turn, therefore, to defendants' motion to dismiss—an unwieldy beast asserting nine separate grounds for dismissal, only several of which receive attention in defendants' memorandum of law. For these purposes, we, of course, assume the facts alleged in the complaint to be true. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976).

## A. THE COMPLAINT

The complaint states that on October 7, 1985, the Board passed a resolution authorizing plaintiff's appointment as superintendent for a term beginning December 6, 1985 and terminating June 30, 1989. On January 16, 1986, pursuant to that resolution, the plaintiff and the Board entered into a written employment contract at a salary of $62,000 per annum. The contract includes a $5,000 expense account and the use of an automobile supplied by the Board. The contract stipulates that the superintendent shall be discharged only "upon a showing of good cause" and "after due service to the Superintendent of written notice of the charges and of the Superintendent's right to a hearing before the Board."

On May 7, 1987, the Board informed plaintiff that he was relieved of his duties as superintendent. The complaint charges that the Board did not provide plaintiff notice of the charges or an opportunity for hearing before its actions on that date. On August 1, 1987, it is alleged that the Board demanded the return of the automobile referenced in the employment contract. On August 26, the Board terminated plaintiff's expense account, but continued paying his salary.

The complaint notes that, by August 21, 1987, plaintiff was residing in North Carolina. On September 9, however, plaintiff's attorney wrote the Board informing them of plaintiff's willingness to return to New York and resume his responsibilities as superintendent as soon as the Board would so allow. Instead, on September 23, 1987, the complaint states that defendants terminated plaintiff's salary, leading to the commencement of this action.

## B. DISCUSSION

As noted, defendants' sometimes convoluted notice of motion asserts nine separate grounds for dismissal. We consider each in turn.

### I.

Point I requests dismissal on grounds that no substantial federal question exists and, therefore, this court lacks subject matter jurisdiction over the pendent state claims. The federal question presented is a typical civil rights claim based on discharge from government employment, asserting unconstitutional deprivations of property and liberty interests pursuant to 42 U.S.C. § 1983 (1982) ("section 1983"). The touchstone of our analysis is, of course, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ For one to have a property interest in employment, one must have more than a mere desire or expectation of future employment; one must have a "legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. A prima facie claim to a *Roth* entitlement exists where, as here, an employment contract is alleged to contain language stating that an employee can be fired only upon a showing of "good cause." *Stein v. Board of Educ.*, 792 F.2d 13, 17 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986). *Accord S & D Maint. Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988). Not only is it alleged that the contract in question contained a "good cause" provision, but it also purportedly required that notice and a hearing be provided before plaintiff could be discharged.

■ Defendants cite *Costello v. Town of Fairfield*, 811 F.2d 782 (2d Cir.1987) for the proposition that a contract dispute does not give rise to a cause of action under section 1983. Thankfully, this general proposition remains true, even in this circuit. *See S & D Maintenance*, at 967 (noting that property interests must remain

within context of *Roth* and that, consistent with *Costello*, questions solely of contract *interpretation* do not rise to cause of action under section 1983). The question here, however, is not one of contract interpretation per se; rather, it is whether there was deprivation of a *Roth* entitlement without due process. A fourteenth amendment property interest necessarily is grounded in some independent source, such as state law or an employment contract. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). In the post-*Roth* world of section 1983, however, that fact doesn't *destroy* the constitutional claim, it *creates* it. As the Second Circuit recently emphasized in a case similar to the one at bar, interference with entitlement rights implicates due process considerations—regardless of available contract remedies. *Petrella v. Siegel,* 843 F.2d 87, 89 (2d Cir.1988).

Defendants argue that the contract in issue was executed beyond the scope of the Board's statutory authority and is, therefore, invalid under the doctrine of *ultra vires.* As discussed *infra* point V, we reject that argument.

Plaintiff also asserts that he received a term appointment pursuant to N.Y. Educ. Law § 2507 (McKinney 1981) (outlined *infra* point V), providing an additional foundation for the property interest here asserted. The contract alone, however, provides a prima facie basis for determining the existence of a *Roth* entitlement, so we need not consider at this time the extent to which the statutory appointment provides alternative grounds.

As to the liberty claim, we find that the current complaint does not pass muster under Rule 12(b)(6). *Roth* determined that terminating a teacher's employment does not deprive that individual of a liberty interest when he or she "simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. at 2708. Elaborating on this concept, the Court later held that where there is no public disclosure of the reasons for the discharge prior to litigation, the plaintiff is not sufficiently stigmatized so as to be deprived of a liberty interest. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1975). Although the instant complaint perfunctorily alleges publication by the defendants, this alone is insufficient.

 We recently had occasion to articulate the longstanding prerequisites in this circuit for a civil rights pleading, noting that " 'unsupported allegations, which fail to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense, will not suffice....' " *Pettman v. United States Chess Fed'n,* 675 F. Supp. 175, 177 (S.D.N. Y.1987) (quoting *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam)). Put succinctly, the plaintiff must set forth facts to support his allegations of constitutional deprivations. *Id.* at 178 (citing *Albany Welfare Rights Org. Day Care Center v. Schreck,* 463 F.2d 620, 623 (2d Cir.1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973)). We cannot determine from this complaint what publications were made, and by whom and on what date they were made. Indeed, in opposing the pending motion, plaintiff himself submitted copies of newspaper articles in which the Board *refused to elaborate on why the plaintiff was discharged,* despite repeated prodding by reporters. The *Pettman* pleading rules are designed to weed out frivolous civil rights claims, the prodigious influx of which in recent years constantly has impeded our ability to devote the attention needed to meritorious cases. *Pettman,* 675 F. Supp. at 179. Plaintiff's own exhibits on this motion suggest the soundness of those rules.

Further, it must be alleged in the complaint that any publications made by defendants in this case were false. *S & D Maintenance,* at 970–71 (citing *Brandt v. Board of Coop. Educ. Serv.,* 820 F.2d 41, 43 (2d Cir.1987)). There is no allegation here that disclosures, if made, were false.

Consistent with the above, plaintiff's liberty claim (the second claim for relief asserted in the complaint) is dismissed. He is permitted twenty days to replead if a cognizable liberty claim can be articulated.

■ The defendants contend that notwithstanding the existence of a substantive fourteenth amendment interest (albeit, consistent with this opinion, a property interest only), there has been no deprivation of that interest. They argue that on May 7, 1987 the Board relieved plaintiff of his duties as superintendent, but did not actually terminate his employment. Thus, when plaintiff later moved to North Carolina, the argument continues, he abandoned his position. At that point, defendants had cause to fire plaintiff and, consistent with the employment contract, were not required to provide notice and hearing.

Defendants' attempt to buff and shine events in an effort to give them a new gloss is unavailing. At a minimum, there exists an initial fact question as to whether the Board's actions of May 7 (stripping plaintiff of his authority) was tantamount to directing plaintiff's dismissal. *Cf. Petrella,* at 89 (discussing fact question raised by plaintiff's allegation that his public employer "manufactured his 'resignation' ").

Defendants next contend that plaintiff was afforded whatever hearing rights to which he was entitled. This may or may not be so, and we may have cause to revisit this issue on a motion for summary judgment as the factual record develops. The complaint, however, on its face, survives this challenge under Rule 12(b) by sufficiently alleging that neither notice nor hearing was at anytime provided.

We note in passing that determining just how much process was due in this case may present a closer question than would appear at first glance. *Compare Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (holding that "root requirement" of due process generally dictates hearing prior to termination of employment) *with Giglio v. Dunn,* 732 F.2d 1133, 1134–35 (2d Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984), *cited with approval in Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 102 (2d Cir.1988) (denying teacher's section 1983 claim, based on his allegedly coerced resignation, since availability of Article 78 hearing under New York law constituted sufficient post-deprivation hearing in accord with due process).

Finally, for there to be municipal liability in this case, plaintiff must have been deprived of his property entitlement pursuant to official policy or regulation. *Monell v. Department of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The Supreme Court recently reaffirmed its view that an unconstitutional governmental policy may be inferred from a single decision taken by the highest officials responsible for setting policy in a particular area of the government's business. *City of St. Louis v. Praprotnick,* —— U.S. ——, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988). N.Y. Educ. Law §§ 2503 & 2507 (McKinney 1981) provide local boards of education with the requisite authority to employ school superintendents. Consequently, actions the Board took bearing on plaintiff's alleged dismissal may fairly be construed as constituting municipal policy.

Based on the above, we find that plaintiff has established a prima facie section 1983 claim over which we have jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) (1982). The pendent state claims derive from a common nucleus of operative fact, to wit, the board's decision to relieve plaintiff of his duties as superintendent. Therefore, we exercise pendent jurisdiction over those claims consistent with the principles of *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

II.

Point II of defendants' motion states: "Plaintiff's complaint fails to state the claim upon which relief can be granted...." We note that "the claim" to which defendants refer is not identified in either the motion or accompanying brief (four claims are asserted in the complaint). Regardless, this aspect of the motion is simply a formalism. The substance of defendants' challenges under Rule 12(b) are addressed by the other points in this opinion.

### III.

Defendants next assert that plaintiff has not pleaded his claim of intentional infliction of emotional distress with specificity. We are not aware of any rule requiring that a claim for intentional infliction of emotional distress must be pled with any higher degree of specificity than any typical cause of action, and defendants cite none. In fact, this issue is ignored altogether in defendants' brief. Notice pleading is generally all that is required under the Federal Rules of Civil Procedure. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). That threshold has been met here. The argument set forth in point III, therefore, is rejected.

### IV.

In point IV of their motion, defendants argue that if any claims exist in this case, plaintiff was required to bring them in an Article 78 proceeding within the four-month statute of limitations specified in N.Y. Civ. Prac. L. & R. § 217 (McKinney 1972).

There is, of course, no requirement that a valid section 1983 claim initially be pursued in a state court proceeding. To the contrary, plaintiff need not exhaust available state judicial procedures before challenging a constitutional deprivation in Federal court. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell*, 436 U.S. at 690, 98 S.Ct. at 2035–36. We emphasize that this issue is separate and distinct from whether the availability of an Article 78 proceeding satisfies due process in this case. As indicated *supra,* we do not reach that question on this motion.

The applicability of Article 78 to the pendent claims presents a much closer question. Particularly as to the contract claim, the answer appears to turn on difficult distinctions. With the exception of a single citation in the notice of motion itself (a case which, we add, is not dispositive), defendants' moving papers do not address this aspect of their motion. Like several of the points raised in this nine-headed monster defendants label as a motion to dismiss, we are left to fend for ourselves. Our irritation with this "hit-or-miss" briefing should, at this point, seem obvious. We trust that in the future parties to this case wishing to raise issues before the court will exercise the requisite professionalism and see that those issues are properly researched and addressed. If issues are without merit, obviously, they should not be raised in the first place. For present purposes, we are content to treat point IV of defendants' motion with the same cursory attention that defendants obviously believe it deserves.

As to the tort claim, an action seeking damages from a governmental entity is not properly brought under Article 78. 8 J. Weinstein, H. Korn, & A. Miller, New York Civil Practice (MB) ¶ 7801.2, at p. 78–8 (1987). As to the contract claim, it appears that it may be brought in an Article 78 proceeding so long as damages are "incidental to the primary relief sought." N.Y. Civ. Prac. L. & R § 7806 (McKinney 1981). Thus, to the extent that plaintiff seeks reinstatement based in part on the existence of the employment contract, Article 78 may be an appropriate mechanism for relief. *Pauk v. Board of Trustees*, 68 N.Y.2d 702, 506 N.Y.S.2d 308, 497 N.E.2d 675 (1986). Whether it is *the* appropriate mechanism is unclear. Further, the New York courts "have not fully articulated a comprehensive test" for distinguishing primary from incidental relief. *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986). Holding as we do, *infra* point IX, that the contract claim may be dismissed on other grounds, and in light of the inadequate (i.e., non-existent) briefing of this issue, we decline to enmesh ourselves in what appears to be a somewhat difficult Article 78 question.

### V.

Point V of defendants' motion asserts that the pendent contract claim (and, to the extent that the contract may serve as the basis for a *Roth* entitlement, the section 1983 claim as well) should be dis-

missed since the employment contract in question is invalid under the doctrine of *ultra vires.*

The defendant Board has statutory authority to appoint a superintendent of schools "for a term not to exceed five years." N.Y. Educ. Law § 2507(1) (McKinney 1981) ("section 2507"). The resolution approved by the Board on October 7, 1985, appointing plaintiff for a term of approximately three and one-half years, was approved consistent with that statutory authority. Defendants contend, however, that the term appointment of a superintendent is the sole extent of the Board's authority under section 2507; i.e., the Board does not have authority under section 2507 to go beyond the resolution of appointment and enter into a contract for employment.

We, of course, are bound to apply the substantive law of New York in addressing this question. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The little case law that exists on this subject, however, is at odds. *Compare Downey v. Lackawanna City School Dist.,* 51 A.D.2d 177, 379 N.Y.S.2d 557 (4th Dep't 1976) (suggesting section 2507 does not include authority to enter into employment contracts) *with In re Brewster,* 18 Educ. Dep't Rep. 108, 109–10 (N.Y. Educ. Comm'r 1978), *aff'd sub nom., Little Falls City School Dist. v. Ambach,* 68 A.D.2d 995, 414 N.Y.S.2d 799 (3d Dep't), *appeal denied,* 47 N.Y.2d 711, 420 N.Y.S.2d 1023, 394 N.E.2d 293, *rearg. denied,* 48 N.Y.2d 656, 421 N.Y.S.2d 1032, 396 N.E.2d 488 (1979) (holding school boards retain authority to enter into employment contracts, although, in accordance with section 2507, term appointment cannot exceed five years).

We think the New York Court of Appeals, if ultimately faced with this question, would decline to adopt the *Downey* rule. The briefing on this question provides no insight into the policy issues at stake. The plain language of the statute, however, provides that a school superintendent "shall hold his position subject to the pleasure of the board of education...."

N.Y.Educ.Law § 2507(1) (McKinney 1981). If it is a given board's pleasure to set the terms and conditions of employment in writing, so long as those conditions are not inconsistent with explicit statutory provisions outlining a superintendent's or school board's authority, we can ascertain no reasons why those intentions should not be given effect. Indeed, as the former education commissioner suggested in *Brewster,* "[a]greement as to such matters as duties and salary is the *common practice." Brewster,* 18 Educ. Dep't Rep. at 110 (emphasis added). *Accord In re Balen,* 20 Educ. Dep't Rep. 304, 308 (N.Y. Educ. Comm'r 1980).

Although the superintendent for a school district governed by section 2507 cannot, consistent with the statutory direction, be appointed for a term of longer than five years, we can divine no reasons inherent in that statutory proscription dictating that we upset "common practice" and prevent parties from entering into contracts governing terms and conditions of employment during the period of appointment. Consequently, we find that the employment contract at issue in this case is not per se invalid under the doctrine of *ultra vires.* To the extent the contract is not inconsistent with other statutory conditions, it should be given force.

### VI.

Point VI states that even if plaintiff was entitled to a hearing, such a hearing was premature since the Board offered to meet with plaintiff and later entered into settlement negotiations. This point is miscast as part of a Rule 12(b) motion when it appears to this court that it belongs, if at all, as part of a motion for summary judgment. It is bound up with factual considerations, among them a determination as to whether the Board's May 7 actions were tantamount to directing plaintiff's dismissal. Point VI of the motion, therefore, is denied.

### VII.

Defendants assert under a separate heading the allegation that plaintiff now resides outside New York, indicating that

plaintiff has abandoned his position. Our view of this construction was made clear earlier in this opinion. At a minimum, it raises factual questions and, thus, is inappropriately before us on a Rule 12(b) motion.

## VIII.

Point VIII alleges that two of the individually named defendants were not members of the Board at the time of plaintiff's dismissal. Although this may have some relevance, the defendants' brief, again, does not address the issue. Following their lead, we do the same.

## IX.

Point IX requests dismissal due to plaintiff's failure to comply with New York's notice-of-claim requirements, set forth in N.Y. Educ. Law § 3813 (McKinney 1981 & Supp. 1988) ("section 3813"). Varying considerations are implicated as to each of plaintiff's claims.

■ With respect to the section 1983 claim, we recognize that there is some authority for the proposition that the notice-of-claim requirements of section 3813 are applicable. *Cardo v. Lakeland Central School Dist.*, 592 F.Supp. 765, 772–73 (S.D. N.Y.1984) (Keenan, J.). At least one panel of the Second Circuit, however, has made clear (although, arguably in dictum) that it does not share that view. *Brandon v. Board of Educ.*, 635 F.2d 971, 973 n. 2 (2d Cir.1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), *reh'g denied*, 455 U.S. 983, 102 S.Ct. 1493, 71 L.Ed. 2d 694 (1982). Although this court is sensitive to notions of federalism and the concerns outlined by Judge Keenan in *Cardo*, we feel bound by the Second Circuit's unmistakable directive in *Brandon*. Consequently, we find that section 3813 is inapplicable to the section 1983 claim. *Accord Burroughs v. Holiday*, 621 F.Supp. 351, 353–55 (W.D.N.Y.1985); *Williams v. Allen*, 616 F.Supp. 653, 656–59 (W.D.N.Y.1985).

Notwithstanding that holding, section 3813 remains applicable to the pendent causes of action. This court has determined that section 3813's notice-of-claim requirements are substantive, not procedural. *Piesco v. City of New York*, 650 F. Supp. 896, 901 (S.D.N.Y. 1987). Consequently, consistent with *Erie* and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965), we are bound to apply section 3813 to the pendent claims. We turn, therefore, to the differing provisions of section 3813 for tort and non-tort claims asserted against a school board.

■ As to non-tort claims (the contract claim in this case), section 3813 provides, in pertinent part, that no action against a school board may be maintained "unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented *to the governing body of said [school] district* or school within three months after accrual of such claim...." N.Y.Educ.Law § 3813(1) (McKinney 1981) (emphasis added). It is conceded that the only notice of claim served in this case was on the Board's attorney, and not the Board itself. The distinction, although esoteric, is fatal to the instant contract claim.

Faced with a virtually identical case in which the plaintiff had served notice of claim on the defendant school board's attorney only, the New York Court of Appeals squarely held that strict compliance with the statute's mandate is required. The Court unequivocally stated that failure to serve anyone other than the governing body of the school district (the board of education), as directed by section 3813(1), mandates dismissal—even though a technical failure to comply in no way prejudices the board and the outcome (dismissal) is necessarily harsh. *Parochial Bus Sys., Inc. v. Board of Educ.*, 60 N.Y.2d 539, 548–49, 470 N.Y.S.2d 564, 568–69, 458 N.E. 2d 1241 (1983). Consequently, plaintiff's contract claim is dismissed.

In their memorandum of law opposing the instant motion, plaintiff's counsel make reference to the fact that, should we find that the contract claim is barred by section 3813(1), plaintiff should be permitted leave to file a notice of claim and amended com-

plaint. It is true that, *"[u]pon application,* the court, in its discretion, may extend the time to serve a notice of claim." N.Y.Educ.Law § 3813(2–a) (McKinney 1981 & Supp. 1988) (emphasis added). If a formal application is made by plaintiff, we will, of course, give it proper consideration. A cryptic reference in plaintiff's brief to the extension provision, however, will not satisfy in lieu of a formal application. Defendants should be given an opportunity to raise whatever objections may exist. We underscore, however, that should plaintiff choose to make such an application, time may be of the essence. *See id.* (setting outside limit for court-granted extension at the statute of limitations for the relevant claim, which, according to section 3813(2–b), appears to be one year for the instant contract claim).

■■■ The notice-of-claim provisions for tort actions are different. Section 3813 provides that "a notice of [tort] claim shall have been made and served in compliance with section fifty-e of the general municipal law." *Id.* at § 3813(2). That section requires, *inter alia,* that a notice of claim, served within ninety days after that claim arises, may be served on the school board itself "or to an attorney regularly engaged in representing such public corporation." N.Y. Gen. Mun. Law § 50e(3)(a) (McKinney 1986). Plaintiff's counsel, in the brief opposing this motion, contend that a notice of claim was served on the Board's attorney on June 8, 1987. In a letter dated June 11, 1987, the Board's attorney verified receipt. Defendants do not dispute these assertions, arguing instead that section 3813(1) applies to both the contract and the tort claims. That conclusion is obviously at odds with the plain language of the statute, since section 3813(2) expressly applies to tort claims. We would concede that, in light of the strict construction directed by *Parochial Bus,* there are differing service requirements for tort and non-tort claims under section 3813. Although that may appear anomalous, we note that section 3813(2) was in existence when *Parochial Bus* was decided. Consequently, it is fair to assume that the Court of Appeals was aware of the fact that its strict reading of section

3813(1) would create somewhat of an inconsistency with the broader service requirements of section 3813(2). Therefore, although we find that plaintiff's contract claim is barred under section 3813(1), we find that the tort claim survives since notice of that claim was served in conformance with section 3813(2).

### *Conclusion*

For the above reasons, we dismiss plaintiff's liberty claim under section 1983, although plaintiff is permitted twenty days to replead if a cognizable liberty claim can be asserted. We also dismiss plaintiff's contract claim for failure to serve a notice of claim in conformance with section 3813(1), although plaintiff is permitted to make application to this court for an extension of time to serve that notice. The defendants' motion to dismiss is denied in all other respects, and plaintiff's motion for summary judgment and attorney's fees is denied completely without prejudice to renewal at an appropriate time.

SO ORDERED.